KRIER et al., Appellees,

v.

FRANKLIN COUNTY BOARD OF REVISION et al., Appellants.

[Cite as *Krier v. Franklin Cty. Bd. of Revision* (1994), 100 Ohio App.3d 344.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APH05–679, 94APH05–680, 94APH05–681, 94APH05–682, & 94APH05–683.

Decided Dec. 30, 1994.

*Steven Swaim,* for appellees Geraldine E. Krier, Suzanne Cruickshank, Jane B. Perry, Elmer and Mary Collins and Meadowbrook Partners.

*Michael Miller,* Prosecuting Attorney, and *James R. Gorry,* Assistant Prosecuting Attorney, for appellants Franklin County Auditor and Franklin County Board of Revision.

*Teaford, Rich, Coffman & Wheeler,* and *Jeffrey A. Rich,* for appellant City of Columbus School District.

---

DESHLER, Judge.

Appellants, the Franklin County Auditor and Franklin County Board of Revision ("BOR") and the Board of Education of the city of Columbus School District, appeal from a decision of the Ohio Board of Tax Appeals ("BTA") in favor of appellees, who are the separate owners of five parcels of real estate in Franklin County.

Appellees contracted with Ambassador Research, Inc. ("Ambassador"), under a "consultant-agency agreement" authorizing Ambassador to execute and file applications for decrease in property tax valuation for appellees under R.C. 5715.13, which provides as follows:

"The county board of revision shall not decrease any valuation complained of unless the party affected thereby or his agent makes and files with the board a written application therefor, verified by oath, showing the facts upon which it is claimed such decrease should be made."

From the record, it is clear that Ambassador and its president, Douglas Parobek, are in the business of searching local property records for parcels which

Parobek believes to be overvalued. Parobek then approaches the property owners and proposes a contingent fee arrangement under which he incurs all costs of the application in exchange for fifty percent of the resulting tax savings for the first two years after the decrease in valuation.

After appellees entered into agreements with Ambassador, Parobek filled out and filed applications under R.C. 5715.13. On August 5, 1992, the BOR heard testimony from a property manager, an appraiser hired by Ambassador, and Parobek as agent for the property owners. On August 6, 1992, the BOR issued a decision maintaining the value of the properties as originally established. An appeal to the BTA ensued.

Appellants moved for dismissal before the BTA, alleging a lack of jurisdiction because the filing of the underlying complaints and appearance by Parobek at the BOR hearing constituted the unauthorized practice of law, which deprived the BTA of jurisdiction. The BTA held that it was without statutory authority to limit its own jurisdiction. The BTA then concluded that based upon the language in R.C. 5715.13 by which an application for decrease in value may be filed by "the party affected thereby or his agent," the statute did not limit such an application to an "attorney/agent." A second BTA hearing was held on the issue of the true value of the property, after which the BTA granted a substantial reduction in the value of all five parcels.

Appellants have timely appealed and bring the following assignments of error:

"1. The Ohio Board of Tax Appeals erred in denying the motion of the board of education and county auditor to dismiss the notices of appeal filed with the board pursuant to R.C. 5715.13, and the decision of the Board of Tax Appeals was unreasonable and unlawful in that regard pursuant to R.C. 5717.04.

"2. The Board of Tax Appeals erred in relying upon the appraisal of Ronald Davis in granting a reduction in the true value of the properties."

The threshold issue raised by appellant's first assignment of error is whether the preparation and filing, in this case, of an application for reduction of valuation and appearance at the board on behalf of the property owner constitutes the practice of law. For the reasons that follow, we conclude that it is.

In addressing this issue, we are confronted with markedly contrasting precedent. The practice of law in Ohio is governed by R.C. 4705.01, providing as follows:

"No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which he is not a party concerned, either by using or subscribing his own name, or the name of another person, unless he has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules. * * *"

In interpreting this statute, an opinion issued by the Ohio Attorney General has unequivocally stated that "[t]he representation of a complainant by a layman, in a proceeding before a county board of revision in which a record is made, constitutes the unauthorized practice of law under R.C. 5705.01 [*sic.,* 4705.01]." 1973 Ohio Atty.Gen.Ops. No. 73–041, syllabus. This Attorney General's opinion is in large part based upon *Goodman v. Beall* (1936), 130 Ohio St. 427, 5 O.O. 52, 200 N.E. 470, in which the practice of permitting union representatives to assist an injured employee in the submission of a workers' compensation claim was upheld. In *Goodman,* the Supreme Court emphasized that preliminary workers' compensation proceedings must be distinguished from later proceedings at which a record is prepared, upon which a court review of the administrative decision may be made. At that point, *Goodman* holds, a representative must be a licensed attorney:

"In all fairness, it must be conceded that the preparation of a rehearing record should be in complete charge of an attorney at law. It presents exactly the kind of work for which his training and experience peculiarly fit him. Such record constitutes the entire evidence upon which the merits or demerits of a claim can be determined by a court and jury. If a record be poorly and inexpertly prepared, the rights of interested parties may be seriously prejudiced. Its formation unquestionably comes within any well considered and complete definition of the practice of law." *Id.,* 130 Ohio St. at 433, 5 O.O. at 55, 200 N.E. at 473.

The Attorney General's opinion notes that this holding was reaffirmed in *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149, 151, 23 O.O.2d 445, 446–447, 192 N.E.2d 54, 56–57. The Attorney General's opinion concludes that the statutory record-making requirement upon a board of revision under R.C. 4705.08 distinguishes representation before a BOR from the preliminary workers' compensation proceedings in *Goodman,* and more closely resembles the rehearing situation under which *Goodman* requires a representative to be a licensed attorney.

Also holding that appearance by a layman before a BOR constitutes the unauthorized practice of law is *Cocon, Inc. v. Botnick Bldg. Co.* (1989), 59 Ohio App.3d 42, 570 N.E.2d 303. *Cocon* similarly involved a property tax consultant who entered into a contract with property owners to obtain a reduction in property values. When the property owners subsequently failed to pay the consultant's fees under the contract, the consultant sued for the contract price. The court found that the consultant had failed to obtain the appropriate corporate license to do business in Ohio, thus preventing the consultant from bringing an action in enforcement of its contract. The court further found that an additional reason for finding the contract unenforceable was that the plaintiff had engaged in the unauthorized practice of law: "[A]dvocacy by a layman, on behalf of non-

related complainants before the county board of revision, constitutes the unauthorized practice of law as prohibited by R.C. 4705.01." *Id.,* 59 Ohio App.3d at 43, 570 N.E.2d at 305.

In contrast to the above authority, we are confronted by the diametrically opposite conclusion reached by the State Board of Commissioners on the Unauthorized Practice of Law in *Cleveland Bar Assn. v. Middleton* (1994), 66 Ohio Misc.2d 9, 642 N.E.2d 71. *Middleton* involved similar tax reduction solicitations to those found in the case *sub judice.* In concluding that representation by a layman before a BOR did not constitute the unauthorized practice of law, the commissioners noted that, since *Goodman,* the Supreme Court decisions in this area had placed little emphasis upon the making of a record during the proceeding at issue. The commissioners also noted that the Supreme Court should not exercise its authority to regulate the practice of law in too rigid a manner so that the public good would suffer. *Id.* at 12, 642 N.E.2d at 73, citing *Henize v. Giles* (1986), 22 Ohio St.3d 213, 22 OBR 364, 490 N.E.2d 585.

The commissioners noted that the Supreme Court decisions since *Goodman* have placed less emphasis upon the making of a record. *Henize,* in particular, concluded that an appearance before the unemployment compensation board of review did not constitute the unauthorized practice of law although it is a proceeding of record. The commissioners also noted that the record created at a BOR hearing may be supplemented under some circumstances at the BTA or common pleas level.

We believe, however, that the ultimate foundation of the commissioners' decision is found in the following language:

"It is noteworthy that it is the practice in this state to allow non-attorneys to represent fee holders before boards of revision. This practice is sensible. The issue before the boards of revision—the fair market value of real estate—is not one which requires legal skill to resolve. In fact, that issue is often the subject of expert testimony by law appraisers. Moreover, board of revision proceedings are not governed by the Rules of Evidence and typically the board members are not attorneys. Further, the relator has not alleged or offered any evidence that there is harm to the public by allowing non-attorneys to represent fee holders before boards of revision. For these reasons, and in conformity with *Henize v. Giles* and other Supreme Court authority, we conclude that the activities of the respondents before boards of revision do not constitute the unauthorized practice of law." *Middleton, supra,* 66 Ohio Misc.2d at 14, 642 N.E.2d at 75.

It is undisputed that practice by nonattorneys before the boards of revision is widespread in Ohio. However, such conduct or practice, while in conformity with custom, is no guarantee of conformity with the law. The record before us clearly establishes that the contesting of real estate valuations has become somewhat of a

cottage industry in Ohio. Parobek, the president of Ambassador, testified that he had paid some $200,000 over the past three years to his appraiser, which gives some measure of the revenues realized by Ambassador during that time. Parobek further testified that in his review of the property tax records he would identify approximately four out of ten properties which he believed were overvalued. Of these, he would contact approximately three quarters, or three out of ten of all properties he reviewed, in order to solicit a contingent fee arrangement for the reduction of taxes. The conclusion is inescapable: far more than simple assistance and representation at an informal workers' compensation proceeding or unemployment claim, tax valuation entrepreneurs such as Parobek are in the business of generating challenges to the property tax valuations of Ohio for profit. As one property is revalued, those adjacent are inescapably affected; each successful revaluation engenders more challenges.

As stated by the commissioners in *Middleton,* one criterion expressed by the Supreme Court on this issue is "that whether a skill peculiar to one trained and experienced in the law is involved is probative of whether the practice of law is present." *Id.,* 66 Ohio Misc.2d at 12, 642 N.E.2d at 73, citing *Gustafson v. V.C. Taylor & Sons, Inc.* (1941), 138 Ohio St. 392, 20 O.O. 484, 35 N.E.2d 435; *State ex rel. Doria v. Ferguson* (1945), 145 Ohio St. 12, 30 O.O. 241, 60 N.E.2d 476; *Dayton Bar Assn. v. Lenders Service, Inc.* (1988), 40 Ohio St.3d 96, 532 N.E.2d 120; *Henize, supra,* and others. While the commissioners focused their decision on whether the appraisal and accounting skills required to present an application under R.C. 5715.13 to the BOR are skills peculiar to a lawyer, and concluded that they are not, we believe that this unduly limits the description of the activities of a representative in a BOR hearing. Most significantly, we note the absolute lack of professional or ethical constraints upon property tax valuation entrepreneurs such as Parobek and Ambassador, in presenting their claims to the BOR. While the simple accounting and appraisal functions are no doubt the most obvious components of an application for decrease in tax valuation, a host of other issues are brought forth, most significantly the lack of ethical restraint upon the professional contractor in these circumstances, whose profit depends as much upon the willingness of a property owner to consent to a claim being filed as upon the underlying merits of such a claim. Although it may have become customary for nonattorneys to practice before the BOR, it is clear that this has become an aberrant custom, leading to an abuse of the BOR system.

We believe that the foundational language for any analysis of the unauthorized practice of law in this context may be found in the syllabus of *In re Unauthorized Practice of Law in Cuyahoga Cty., supra,* 175 Ohio St. 149, 23 O.O.2d 445, 192 N.E.2d 54:

"No person, other than an attorney in good standing, may hold himself out as being qualified to render service to those who may have claims for compensation arising under the Workmen's Compensation Laws of Ohio or as being able to render services in the preparation and presentation of such claims nor may such person render such advice or services if a fee for such advice or services is to be received from or charged against the one having such a claim." *Id.* paragraph three of the syllabus.

The court emphasized that "the practice of law is not limited to the conduct of cases in court," and that "advice to clients and action taken for them in matters connected with the law *may* constitute the practice of law *where a fee is paid for such advice and action.*" (Emphasis *sic.*) *Id.* at 151, 23 O.O.2d at 447, 192 N.E.2d at 57, citing *Land Title Abstract & Trust Co. v. Dworken* (1934), 129 Ohio St. 23, 1 O.O. 313, 193 N.E. 650. It is apparent that the Supreme Court sought to develop a definition of the practice of law in instances where an appearance in court or preparation of court record was not involved, and relied upon the payment of a fee for the services in question as a sound test of whether conduct constituted the unauthorized practice of law.

It is significant that both *In re Unauthorized Practice of Law* and *Goodman,* relied upon in the 1973 Attorney General's opinion, have been favorably cited in more recent Supreme Court opinions. In the case of *State ex rel. Nicodemus v. Indus. Comm.* (1983), 5 Ohio St.3d 58, 5 OBR 115, 448 N.E.2d 1360, the court stated that an actuarial firm was not authorized to practice law and thus not authorized to "advise its clients of the legal ramifications of commission orders." *Id.* at 60, 5 OBR at 116, 448 N.E.2d at 1362. In *Henize, supra,* extensively relied upon by appellee, the Supreme Court was careful to preserve precedent concerning the definition of the practice of law, as embodied in *Nicodemus, In re Unauthorized Practice of Law, Goodman,* and *Land Title Abstract & Trust Company. Henize* carves out an extremely limited exception while preserving the broad rule prohibiting the unauthorized practice of law:

"We do not find our past holdings to be at odds with today's decision because the case *sub judice* is distinguishable from past precedent, the holdings of which we conclude are correct but inapposite. Undeniably the proceedings before the board are similar in some respects to those of other government hearings where we have held that representatives of parties must be licensed attorneys.

"In this instance, however, we have noted several considerations which combine to support a finding that the matter is materially different and ripe for a *narrow exception.*" (Emphasis added.) *Henize,* 22 Ohio St.3d at 219, 22 OBR at 368–369, 490 N.E.2d at 590, fn. 10.

The court concluded that appearances before the Unemployment Compensation Board of Review did not constitute the unauthorized practice of law because these

proceedings are legislatively intended to serve as an informal mechanism under which a referee would act in a participatory capacity to ascertain necessary facts. "In light of the serious detriment to claimants and employers which would result if the current system was unnecessarily disturbed, we deem this to be an appropriate and *limited setting* in which to authorize lay representation by granting due deference to the statute and agency rule." *Id.*, 22 Ohio St.3d at 220, 22 OBR at 369, 490 N.E.2d at 590–591.

It is apparent that considerations present in *Henize* are not at issue in the case before us. The serious detriment to be avoided in this case stems from the unrestrained activities of independent contractors actively soliciting fee arrangements with property holders, and potentially challenging the valuation of thirty percent of the entire real property tax base of the state with no professional check upon their activities.

As in *Henize*, the statute governing revaluation of properties does require some harmonization with the general prohibition against the unauthorized practice of law in Ohio. R.C. 5715.13 states that "the party affected thereby or his agent" may make and file an application for a decrease in valuation. Appellees have taken this, in reliance upon the general law of agency, for the proposition that any person or corporation entering into an agency relationship with a property owner, if only for the specific purpose of applying for decrease in valuation, satisfies the language of R.C. 5715.13. We decline to accept the agency language found in the statute as a general grant of authority to practice law without a license in proceedings before boards of revision. Such statute contains no language overriding or limiting R.C. 4705.01. See *Otto v. Patterson* (1962), 173 Ohio St. 174, 18 O.O.2d 440, 180 N.E.2d 575.

■ We therefore find that it is the unauthorized practice of law for an agent, having no other connection to the landowner than representation seeking tax reduction, to solicit and file applications pursuant to R.C. 5715.13 with a county board of revision. This conclusion expressly does not affect in any manner the right of a property owner to represent himself at such a proceeding, or to be represented by a nonattorney agent meeting the statutory requirements as noted above. This conclusion *does* expressly define as the unauthorized practice of law the activities of tax valuation entrepreneurs actively engaged in the solicitation of fee arrangements with property owners in the state.

■ The requirements of R.C. 5715.13 are jurisdictional. *May Dept. Stores v. Bd. of Rev.* (1977), 49 Ohio St.2d 183, 3 O.O.3d 245, 360 N.E.2d 697. Failure by an applicant to comply with statutory requirements, in this case to secure the services of an appropriate agent, deprives the BOR, and subsequently the BTA, of jurisdiction. *Id.* The BTA therefore erred in failing to dismiss the action

upon appellant's motion. Because of our foregoing conclusion, it is unnecessary to address appellants' further arguments in support of their first assignment of error relating to the allegations of champerty and maintenance by Ambassador. Appellants' second assignment of error is rendered moot. Appellants' first assignment of error is sustained, the BTA's decision is reversed, and this cause is remanded to the BTA with instructions to dismiss appellees' appeal.

*Cause remanded*
*and decision reversed.*

WHITESIDE, P.J., and JOHN C. YOUNG, J., concur.