THE STATE, EX REL. NICODEMUS, APPELLEE AND CROSS-APPELLANT, *v.*
INDUSTRIAL COMMISSION, APPELLANT AND CROSS-APPELLEE, ET AL.

[Cite as State, ex rel. Nicodemus, *v.* Indus. Comm. (1983),
5 Ohio St. 3d 58.]

(No. 82-717—Decided May 25, 1983.)

*Messrs. Dinsmore & Shohl, Mr. Mark A. Vander Laan, Ms. Glenda Morgan Daker* and *Mr. David P. Kamp,* for appellee and cross-appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Richard J. Forman,* for appellant and cross-appellee.

*Per Curiam.* R.C. 4123.522 provides:

"The employee, employer and their respective representatives shall be entitled to written notice of any hearing, determination, order, award or decision under the provisions of Chapter 4123 of the Revised Code.

"If any person to whom a notice is mailed shall fail to receive such notice and the industrial commission, upon hearing, shall determine that such failure was due to cause beyond the control, and without the fault or neglect of such person or his representative and that such person or his representative did not have actual knowledge of the import of the information contained in such notice, such person may take the action afforded to such person within twenty days after the receipt of such notice of such determination of the industrial commission. Delivery of such notice to the address of such person or his representative shall be prima facie evidence of receipt of such notice by such person."

The court of appeals determined that timely receipt of notice by Gates, McDonald precluded the employer from entitlement to relief under R.C. 4123.522. In deciding this issue the court of appeals interpreted R.C. 4123.522 as requiring a determination "that neither the person to whom the notice was addressed nor his representative had actual knowledge of the information contained in the notice." However, the relevant portion of R.C. 4123.522 states that "'* * * such person or his representative did not have actual knowledge of the *import* of the information contained in such notice. * * *'" (Emphasis added.) The omission of this word in the court's statement of the statutory requirements presents a significant change in meaning. While it is clear that Gates, McDonald had actual knowledge of the information contained in the notice, there is a question as to whether a non-attorney can be held responsible for actual knowledge of the *import* of that information.

In this case, the "import" or significance of the order for the employer was that its appeal to the board of review had been denied and the time for further appeal had begun to run. Had the employer's representative been an attorney, notice received by the attorney would have been imputed to the client. *Raible* v. *Raydel* (1954), 162 Ohio St. 25, 29-30 [53 O.O. 458]; *Lutz* v. *Evatt* (1945), 144 Ohio St. 635, 636 [30 O.O. 223]. This rule is derived from

the general agency principle that " '* * * the principal is chargeable with and bound by the knowledge of or notice to his agent received by the agent in due course of his employment, with reference to matters to which his authority extends * * *.' " *Raible* v. *Raydel, supra,* at 29.

Appearances and practice before the Industrial Commission constitute the practice of law. *Goodman* v. *Beall* (1936), 130 Ohio St. 427 [5 O.O. 52]; *In re Unauthorized Practice of Law* (1963), 175 Ohio St. 149 [23 O.O.3d 445]. Gates, McDonald is not authorized to practice law, and, thus, is not authorized to advise its clients of the legal ramifications of commission orders. For this reason, we find that the "import" of the order was beyond the scope of Gates, McDonald's authority, and that the notice received by it cannot be imputed to the employer.

At this juncture, relator argues that the status of Gates, McDonald is irrelevant because the employer received actual notice of the order by April 13, 1980, and its appeal time should have run from that date. It is fundamental, however, that in order for notice to be effective, it " 'must be granted at a meaningful time and in a meaningful manner.' *Armstrong* v. *Manzo* [1965], 380 U.S. 545, 552." *Fuentes* v. *Shevin* (1972), 407 U.S. 67, 80. While it is correct that the time for appeal does not begin to run until receipt of notice of the order (R.C. 4123.516), in this case the employer did not receive a copy of the order until April 13, 1980, at the latest. By this time, the other parties had known of the order for over two months and had acted accordingly. For this reason, we find that the notice received by the employer on April 13, 1980 was not made at a "meaningful time." Moreover, the position urged by relator would penalize the employer for pursuing a statutorily provided remedy. R.C. 4123.522 addresses the exact situation presented in this case, and the employer's decision to seek relief under the statute was warranted.

In her cross-appeal, relator argues that R.C. 4123.522 constitutes an unreasonable delegation of legislative authority because it provides no time limit within which a party may seek relief thereunder. This argument is without merit. The lack of specific standards in a law conferring discretion upon an administrative agency does not amount to an unlawful delegation of legislative authority if such standards would defeat the legislative object sought to be accomplished. *Blue Cross* v. *Ratchford* (1980), 64 Ohio St. 2d 256, 260 [18 O.O.3d 450]; *Blue Cross* v. *Jump* (1980), 61 Ohio St. 2d 246, 252 [15 O.O.3d 257]. The very nature of relief afforded by R.C. 4123.522 precludes the imposition of a fixed time limit. In situations where it is alleged that notice was not received, the issue of timeliness requires an independent determination in each case depending on the circumstances.

We cannot find the employer's motion for relief under R.C. 4123.522 untimely inasmuch as it was filed within thirty days from receipt of the order.

For the foregoing reasons, the commission did not abuse its discretion in granting the employer's motion for relief under R.C. 4123.522. Accordingly, the judgment of the court of appeals is reversed and the writ is denied.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, C. BROWN and J. P. CELE-BREZZE, JJ., concur.

W. BROWN and HOLMES, JJ., dissent.

HOLMES, J., dissenting. I am in agreement with the majority that Gates, McDonald, an actuarial firm, may not practice law — before the Industrial Commission, or elsewhere. However, all representative activity within the Industrial Commission does not necessarily constitute the practice of law. *In re Unauthorized Practice of Law* (1963), 175 Ohio St. 149 [23 O.O.2d 445], does indeed prohibit persons other than attorneys at law from rendering preparation and presentation service to those who have claims arising under the workers' compensation laws of Ohio. However, this does not prevent certain services within the Industrial Commission, and its procedures of reviewing industrial claims, from being performed for the employer by other than an attorney at law.

Accordingly, actuarial firms have been established in this state, as well as other states, to carry out a variety of functions within the workers' compensation field. The Industrial Commission, recognizing the active functions within the field that are carried out by the actuarial and representative companies, has promulgated regulations within the Ohio Administrative Code, Rule 4121-2-01, as follows:

"4121-2-01 Standards of practice for attorneys, agents and representatives of claimants or employers

"(A) Reasonable standards for those attorneys, agents and representatives who practice before the bureau of workers' compensation, regional boards of review, and the industrial commission shall include:

"(1) Such attorney, agent or representative shall make himself competent to handle such matters by becoming familiar with the statutes, decisions of the courts, and rules of the bureau and industrial commission relating to workers' compensation.

"(2) Shall make adequate preparation before filing an application or appearing at a hearing.

"(3) Shall not neglect or procrastinate in regard to any matter in which he represents a party.

"(4) Abide by the rules of the bureau or the commission in appearing for a party or in filing applications.

"(5) In general conduct himself in accordance with the code of professional responsibility as adopted by the supreme court of Ohio under date of October 5, 1970.

"(B) No person who solicits or who causes claims to be solicited shall be allowed to practice or represent parties before the industrial commission, the regional boards of review, or the bureau (section 4123.96 of the Revised Code). No person other than an attorney in good standing may render advice or services in the preparation or presentation of a claim for compensation

arising under the workers' compensation laws of Ohio if a fee for such advice or services is to be received from or charged against the one having such claim."

The Ohio State Bar Association, as well as actuarial firms in Ohio, realizing the need for an appropriate statement of their respective services to claimants on the one hand, and employers on the other, on December 31, 1970, adopted "Standards of Practice Governing Actuarial Services," a portion of which is set forth as follows:

## "ARTICLE I

"In recognition that actuarial service companies exist as an agency by means of which many employers discharge their obligations in the processing of claims, rate determination data and information pertinent to claims of injured workmen, actuarial service companies may properly perform the following functions:

"1. Prepare, maintain, file and process any and all records and reports required of employers by the Bureau of Workmen's Compensation or the Industrial Commission of Ohio.

"2. Prepare, maintain, file and process records and reports dealing with job classifications pertinent to premium rates.

"3. Prepare, maintain, file and process records, reports and statistics referable to injuries sustained and occupational diseases contracted and their effect on premium rates.

"4. Prepare, maintain, file and process records and reports concerning premiums and payrolls.

"5. Prepare and maintain records of reserves and charges to employer's accounts, including the preparation and filing of informal protests of reserves.

"6. Prepare and maintain annual reports to employers dealing with the status of risks, status of reserves and actuarial analysis thereof.

"7. Prepare, maintain and report the actuarial analysis of any claim, award, or reserve on premiums.

"8. Investigate, or assist employers in investigating, the facts with respect to any claim, including discussing the facts and their relationship to the claim with employers, witnesses, and others, preparing and securing the execution of statements and affidavits, and preparing reports regarding the facts. However, this would not permit discussions with any member or employee of the Bureau of Workmen's Compensation, Regional Boards of Review, and/or Industrial Commission of Ohio concerning a claimant's right to compensation for any injury, disease, or death in a contested claim.

"9. Assist employers in the administrative work incident to the filing of claims and appeals, without making any legal determination respecting such appeals, before the administrator of the Bureau of Workmen's Compensation, Regional Boards of Review and/or the Industrial Commission of Ohio. This, however, would not permit advising the employer whether or not an ap-

peal should be filed, except with respect to the actuarial effect of an appeal upon the employer's rates and reserves.

"10. Attend any hearing before the Administrator, Regional Boards of Review and/or Industrial Commission for the purposes of recording and reporting any action taken at such hearing, apprising the hearing officer or officers, without comment, of documents or parts thereof that are in the file, filing documents, requesting a postponement or continuance of the hearing, and testifying as a witness upon matters within the independent knowledge of the actuarial service company personnel, subject to all the limitations of Article II."

It is my position that the practice of actuarial companies, such as Gates, McDonald, is a recognized lawful part of the overall functioning of the Industrial Commission, and that such representation of the employer's needs before the commission as outlined within the agreed standards set forth above does not constitute the practice of law. However, such representation by the actuarial company of the employer does create an agency status, and the law normally applied to this relationship as regards the issue of notice is that notice to the agent is notice to the principal. Such general law would have to be applied here.

The notice to Gates, McDonald relative to the finding of the commission constituted notice to the employer. The language relating to having "actual knowledge of the import of the information contained in such notice" is not applicable to this case in my view. This portion of R.C. 4123.522 only comes into play when either the employer or the representative failed to receive a notice. If such be the facts of a given case, notice still may be effected if the person or his representative had actual knowledge of the information contained in such notice. The word "import" is used only in the sense that the information in the notice was known by the person or his representative — not that a full and detailed legal analysis was made of such information.

The notice was duly received here by the agent. Therefore, the Industrial Commission abused its discretion in granting the employer's motion for relief under R.C. 4123.522. Accordingly, the judgment of the court of appeals granting the writ of mandamus should be affirmed.

W. BROWN, J., concurs in the foregoing dissenting opinion.