**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Doheny,* Slip Opinion No. 2019-Ohio-3326.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3326

OHIO STATE BAR ASSOCIATION *v.* DOHENY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio State Bar Assn. v. Doheny,* Slip Opinion No. 2019-Ohio-3326.]**

*Unauthorized practice of law—Permanent injunction issued and civil penalty imposed.*

(No. 2019-0245—Submitted March 27, 2019—Decided August 21, 2019.)

ON FINAL REPORT by the Board on the Unauthorized Practice of Law of the Supreme Court, No. UPL 17-02.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Donald A. Doheny Jr., whose last known address is in St. Louis, Missouri, is an attorney who is or has been licensed to practice law in Indiana, Virginia, and the District of Columbia, but he is not—nor has he ever been—licensed to practice law in Ohio.

**{¶ 2}** In a March 7, 2017 complaint filed before the Board on the Unauthorized Practice of Law, relator, Ohio State Bar Association, charged Doheny with 11 instances of engaging in the unauthorized practice of law. The complaint alleged that Doheny held himself out as an attorney in Ohio, provided legal advice to more than six Ohio residents and attempted to negotiate the resolution of some of their legal matters, drafted purchase agreements and quitclaim deeds for real property located in Ohio, and collected approximately $70,000 in fees for those services.

**{¶ 3}** Although Doheny initially participated in relator's investigation, his counsel withdrew from representing him in June 2016 following an unsuccessful effort to negotiate a consent decree. Doheny has not answered relator's complaint or otherwise appeared in the proceeding.

**{¶ 4}** A panel of the board considered the matter on relator's June 5, 2017 motion for default judgment and the attached evidentiary materials, consisting of five affidavits and various documents incorporated therein. Doheny did not file a response to relator's motion. The panel granted the motion with respect to ten counts alleging the unauthorized practice of law and declined to consider an additional alleged violation for which relator presented no evidence.

**{¶ 5}** The board issued a report finding that Doheny practiced law in violation of Ohio licensure requirements on ten occasions and recommending that we enjoin him from committing further illegal acts and assess a $25,000 civil penalty—$2,500 for each instance of the unauthorized practice of law. We agree that Doheny engaged in the unauthorized practice of law in Ohio and that an injunction and $25,000 civil penalty are warranted.

**Findings of Fact**

**{¶ 6}** Doheny earned his undergraduate and law degrees from the University of Notre Dame in 1977 and 1981, respectively.

**{¶ 7}** According to Frederick Hogan, a close friend of Doheny, Doheny suffered a serious head injury in a 1993 auto accident that left him unable to maintain steady work. Doheny maintained his license to practice law in Indiana but surrendered his licenses (or was suspended based on his disability) in Virginia and the District of Columbia.[1] In 1998, Doheny moved from the District of Columbia to live with his mother in St. Louis. After his mother was admitted to a nursing home in 2006, Doheny was essentially homeless. Doheny then moved to Ohio, where he lived with Hogan or Hogan's brother Clifford in their homes in the Hamilton area until sometime in 2015.

### Doheny's Conduct

#### *The Hogan Matters*

**{¶ 8}** In 2010, Frederick Hogan and his brother Thomas (collectively, "the Hogans") received a letter from Butler County alleging that they had violated their lease with the county airport by placing certain signage on the side and roof of their rented hangar. Doheny researched the county's claim and met with county officials on the Hogans' behalf to argue that the county commissioners had never approved the signage requirements that it claimed were incorporated in the Hogans' lease. As a result of Doheny's actions, the county abandoned its demand that the Hogans remove the signage.

**{¶ 9}** Doheny also represented the Hogans at a public meeting of the county commissioners in July 2010, when he unsuccessfully sought to amend the Hogans' airport lease so that they would qualify for a Small Business Administration loan to build a new hangar at the airport. In addition, Doheny provided legal advice to the Hogans regarding the building permits required to construct the new hangar and

---

1. Notably, the copy of Doheny's resume that his counsel furnished to relator states that Doheny's Virginia license was "restored in 2010 upon completion of 200 hours of [continuing legal education] and other testing."

participated in numerous discussions with city officials on the Hogans' behalf regarding compliance with those permits.

{¶ 10} Doheny ultimately advised the Hogans to file a lawsuit against the county. He told them that he could not represent them in that litigation, but after they retained Ohio counsel, Doheny asked to "be part of the[ir] legal team." The Hogans' attorney rejected his request.

{¶ 11} In addition, Doheny filed an application on behalf of the Hogans with the Federal Aviation Administration ("FAA") requesting that the agency include the name "Hogan Field" in the county airport's registered name. After the FAA denied the application, he filed a request for documents on behalf of the Hogans under the Freedom of Information Act and stated that the Hogans were his "clients." He then engaged in discussion and legal argument with FAA representatives regarding the substance of the Hogans' records request. Frederick Hogan averred that from 2010 through 2012, he paid Doheny approximately $64,000 for his services.

{¶ 12} Doheny also prepared purchase agreements in connection with Clifford Hogan's sale of Ohio real property in August 2012 and March 2013. Doheny billed $1,150 for those services.

*The Fishwick Matters*

{¶ 13} Doheny provided legal services to Stephen K. Fishwick and his son, Douglas, in two separate matters. First, Doheny prepared a quitclaim deed transferring real property located in Hamilton, Ohio, from Douglas to Stephen; Stephen paid Doheny approximately $300 for his services. That deed stated that it had been prepared by Doheny from an office at 19257 Collier Ridge Road, Guilford, Indiana.

{¶ 14} Doheny also represented Douglas after Douglas was arrested. Doheny went to the Butler County Jail with Stephen, where Doheny told law-enforcement officials that he was the "family lawyer" and attempted to negotiate

Douglas's release from the jail by representing that Douglas could serve as a confidential informant. Stephen paid Doheny $2,000 for that representation.

*The Gerdes Matter*

**{¶ 15}** In an April 17, 2013 letter to relator, Doheny's counsel admitted that Doheny had prepared a quitclaim deed for Patricia Gerdes in connection with real property located in Butler County. That deed stated that it had been prepared by "Donald A. Doheny, Jr., Esq.[,] Attorney at Law," at 19257 Collier Ridge Road, Guilford, Indiana.

*Holding Himself Out as Being Authorized to Practice Law*

**{¶ 16}** Doheny held himself out as being authorized to practice law in the state of Ohio. In communicating with the FAA on behalf of the Hogans, he used "Doheny & Doheny" letterhead indicating firm locations in Los Angeles, California, St. Louis, Missouri, Washington, D.C., and Cincinnati, Ohio. Although the letterhead described the firm as "Consultants and Lobbyists," Doheny's signature block identified him as "Donald A. Doheny, Jr., Esq." above the word "Principal," followed by a Hamilton, Ohio address.

**{¶ 17}** Frederick Hogan averred that to his knowledge, Doheny was not a member of Doheny & Doheny, had not lived in St. Louis since 2006, and had no office there. Frederick further averred that he owned the property located at the Hamilton, Ohio address stated on the firm's letterhead and that Doheny did not have an office at that location or have permission to use that address for business purposes.

**Doheny Engaged in the Unauthorized Practice of Law**

**{¶ 18}** This court has original jurisdiction to define and regulate the practice of law in Ohio. Article IV, Section 2(B)(1)(g), Ohio Constitution; *Disciplinary Counsel v. Casey*, 138 Ohio St.3d 38, 2013-Ohio-5284, 3 N.E.3d 168, ¶ 9. Our jurisdiction extends to the regulation of the unauthorized practice of law, which is necessary to protect the public from agents "who have not been qualified

to practice law and who are not amenable to the general discipline of the court," *Union Savs. Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 64, 262 N.E.2d 558 (1970). We regulate who may practice law in Ohio to "protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40.

**{¶ 19}** We have defined the unauthorized practice of law in Ohio to include both the "rendering of legal services for another" and the "[h]olding out to the public or otherwise representing oneself as authorized to practice law in Ohio" by any person who is not admitted or otherwise certified to practice law in Ohio. Gov.Bar R. VII(2)(A)(1) and (4); *see also Disciplinary Counsel v. Pratt*, 127 Ohio St.3d 293, 2010-Ohio-6210, 939 N.E.2d 170, ¶ 17.

**{¶ 20}** The practice of law is not limited to the handling of cases in court; an individual who prepares legal documents or contracts that affect the legal rights of others also engages in the practice of law. *Cleveland Bar Assn. v. Misch*, 82 Ohio St.3d 256, 259, 695 N.E.2d 244 (1998); *see also Toledo Bar Assn. v. Chelsea Title Agency of Dayton, Inc.*, 100 Ohio St.3d 356, 2003-Ohio-6453, 800 N.E.2d 29, ¶ 7 (holding that the practice of law embraces the preparation of deeds that convey real property).

**{¶ 21}** We have also held that when an individual who is not licensed to practice law in Ohio negotiates legal claims on behalf of Ohio residents or advises Ohio residents of their legal rights or the terms and conditions of settlement, he or she is engaged in the unauthorized practice of law. *Cleveland Bar Assn. v. Henley*, 95 Ohio St.3d 91, 92, 766 N.E.2d 130 (2002).

**{¶ 22}** A motion for default judgment in an unauthorized-practice-of-law case must be supported by sworn or certified documentary prima facie evidence in support of the allegations of the complaint. Gov.Bar R. VII(7)(B)(2). Based on our precedent and the evidence submitted by relator, the board found that Doheny

committed ten separate instances of the unauthorized practice of law. He provided legal advice and representation to the Hogans with regard to three separate legal matters and negotiated their various disputes with federal, city, and county representatives. He drafted two real-estate purchase agreements for Clifford Hogan, one quitclaim deed for Stephen Fishwick, and another quitclaim deed for Patricia Gerdes. He also negotiated to obtain Douglas Fishwick's release from the Butler County Jail and held himself out as an attorney by using the honorific "Esq." and using false and misleading letterhead to create the impression that he was an attorney authorized to practice law in Ohio. We adopt these findings.

## An Injunction and Civil Penalty Are Warranted

{¶ 23} Having found that Doheny engaged in the unauthorized practice of law, we accept the board's recommendation that an injunction should issue to prohibit him from engaging in further conduct that constitutes the unauthorized practice of law in Ohio.

{¶ 24} Upon finding that a person or company has engaged in the unauthorized practice of law, Gov.Bar R. VII(8)(B) authorizes the board to recommend and this court to impose a civil penalty in an amount up to $10,000 per offense. The board considered the factors listed in Gov.Bar R. VII(8)(B) and UPL Reg. 400(F) and found that several of those factors weigh in favor of imposing a civil penalty against Doheny, including the degree of his cooperation in the investigation, the number of occasions that he engaged in the unauthorized practice of law, the flagrancy of those violations, and the resulting harm to third parties.

{¶ 25} Doheny initially cooperated with relator's investigation, but he ceased to cooperate after his counsel withdrew from representing him. The board found that Doheny flagrantly engaged in ten instances of the unauthorized practice of law. In some instances, he identified himself as a lawyer and his victims as his "clients" and he endeavored to legitimize or conceal his conduct by making it appear that he practiced with a larger, multistate firm or from an office in Indiana.

Moreover, Doheny charged significant legal fees in connection with his unauthorized practice of law and actually collected nearly $70,000 of those fees from Frederick Hogan and Stephen Fishwick. Accordingly, the board recommended that we impose a civil penalty of $25,000—$2,500 for each offense—against Doheny.

**{¶ 26}** On these facts, we agree that a civil penalty of $2,500 for each of Doheny's ten instances of the unauthorized practice of law is appropriate.

**{¶ 27}** Accordingly, we enjoin Donald A. Doheny Jr. from performing legal services in the state of Ohio unless and until he is admitted or otherwise registered or certified to practice law in Ohio in accordance with the Rules for the Government of the Bar of Ohio, and we order him to pay a civil penalty of $25,000. Costs are taxed to Doheny.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

J. Desiree Blankenship, Bar Counsel, for relator.

_____