## OFFICE OF DISCIPLINARY COUNSEL

v.

## PALMER.

Board of Commissioners on the
Unauthorized Practice of Law.

No. UPL 01–1.

Decided Dec. 31, 2001.

---

## FINAL REPORT DISMISSING COMPLAINT

*Per the Board.*

David Palmer is Executive Director, Chairman, and sole active member of the Committee to Expose Dishonest and Incompetent Attorneys and Judges. He is accused of the unauthorized practice of law on three grounds: (1) activities on his web-site, amoralethics.com, which purports to offer "free legal advice"; (2) representations on his letterhead for the committee that he was "now offering free legal advice," and affixing the letters "J.D." after his name; and (3) his 1988 filing of a brief in the Ohio Court of Appeals for the Sixth District on behalf of a corporation of which he was president.

The burden of proof rests upon the relator "to prove its case by a preponderance of the evidence." Gov.Bar R. VII(8)(A). The board finds that the relator has failed to prove by a preponderance of the evidence that the respondent has engaged in the unauthorized practice of law, and therefore the complaint is dismissed. This is nonetheless a close case, and in light of the extraordinary nature of the facts the board will explain the reasons for dismissal.

## Charges Related To the Web-site

David Palmer is a vocal critic of attorneys and judges. His web-site, amoral-ethics.com, serves as the vehicle for his dissemination of those views. One prominent area of his web-site advertises "Free Legal Advice." A visitor to the "Free Legal Advice" portion of the web-site would find the following preamble:

"We are all led to believe that whenever we are faced with some legal matter that we automatically are required to employ an attorney. There are many matters of a legal nature that we can and should resolve on our own without incurring unnecessary expenses of an attorney. Although I am not an attorney, I can assure you that it is not necessary to be a lawyer in order to provide some guidance and/or advice on how to deal with your legal problems.

"Below you will find a brief history of my prior experience in the legal field and brief summaries of the various legal issues that I invite you to submit to me for review and advice. If I feel that you do in fact require the services of an attorney, I will advise you and attempt to provide you with the names of attorneys in your area that are competent to handle the matter and who I believe are ethical and honest."

Palmer recites a background as a court reporter and legal clerk in the United States Army. He states that he has "prepared numerous pleadings and motions at the request of and on behalf of various attorneys in Ohio, including appellate briefs." He lists a series of "legal matters that I would invite you to seek advice from me" topics, such as no-fault benefits, legal malpractice, personal injury auto accident, and the like. Typical of the contents of those sections is the entry under "No–Fault Benefits":

"There are in excess of 20 states that have passed no-fault laws regarding injuries incurred involving automobile accidents. The laws in these states require your insurer to pay your necessary medically related expenses within 30 days. Further, most of these states impose penalties against the insurer for not paying within 30 days of receipt of the proof and amount of each loss incurred. These penalties normally include interest and reasonable attorney's fees. If an attorney advises you that you need his or her services to collect no-fault benefits, then I would suggest that you immediately clutch your purse and/or wallet and find the nearest exit.

"If you are injured in a no-fault state and reside in another state, under most circumstances you are also entitled to no-fault benefits if your insurer writes insurance in both states. If you have any questions about your rights as it relates to no-fault benefits, please email me and I will respond as soon as possible. Remember that you do not need an attorney to collect no-fault benefits."

In a final section titled "Miscellaneous Legal Matters," Palmer states:

"If you have any questions or concerns regarding any legal matter, I would be more than happy to review it and provide you with guidance and/or advice within a reasonable amount of time. It is my desire to assist you in trying to solve your own legal matters when possible without incurring unnecessary legal expenses. It is important to remember that employing an attorney should be the last resort and not your first option. Any guidance or advice that I provide to you is absolutely free. The only time I would seek reimbursement would be for the cost of any copies and postage to send them to you if necessary."

■ Disciplinary Counsel argues that entries such as these amount to the rendition of legal advice, and therefore the unauthorized practice of law. "The practice of law is not restricted to appearances in court; it also encompasses giving legal advice and counsel." *Cincinnati Bar Assn. v. Telford* (1999), 85 Ohio St.3d 111, 112, 707 N.E.2d 462, 463.

■ It is fair to say that Palmer's web-site offers a type of general advice on legal matters, but his comments are little different from what can be found in any number of publications found on newsstands every day. Books and magazine articles offered for sale in Ohio contain legal advice from authors not licensed to practice law in this state, yet the Supreme Court has never found those publications to constitute the unauthorized practice of law. One key element of the practice of law is missing in published advice offered to the general public: the tailoring of that advice to the needs of a specific person. The practice of law involves the rendering of legal advice to an individual. Legal publications offering general advice or opinions do not purport to customize the advice to the particularized needs of the reader.

■ The publication of general legal advice on Palmer's web-site, good or bad, is not of itself the unauthorized practice of law. More troubling is the offer to respond to "any questions about your rights" and "provide you with guidance and/or advice." If Palmer actually gave legal advice in specific response to a question from one of his readers, he would have engaged in the unauthorized practice of law. Thus, if the evidence established that Palmer responded with legal advice to specific inquiries from visitors to his web-site, the relator would have established its case.[1]

---

1. The distinction between general and customized advice in an interactive computer medium was addressed in *Unauthorized Practice of Law Commt. v. Parsons Technology, Inc.* (N.D.Tex. 1999), No. 3:97–CV–2859–H, unreported, 1999 WL 47235, vacated on unrelated grounds (C.A.5, 1999), 179 F.3d 956. *Parsons* held that *Quicken Family Lawyer* ("QFL") software violated the unauthorized practice statute in Texas. The software queried the user to fill in blanks and select from options on legal documents such as employment agreements, leases,

Disciplinary Counsel points to several exhibits as proof that Palmer has in fact given personal legal advice. In one section of his web-site he contrasts his own responsiveness to that of some of the other legal web-sites:

■ "Since the end of June through August 4, 1999, I have received over 500 requests for legal advice. The requests are increasing to the point where I received 26 requests on August 5, 1999, all of which I have responded to."

■ Even if that statement is true, it does not by itself establish unauthorized practice. A response to an inquiry—even one requesting legal advice—does not automatically amount to the rendering of legal advice. When questioned about that statement, Palmer testified that he considers himself "a dispenser of a big dose of common sense," that his responses generally related to the questioner's dealings with lawyers and the legal system, and that he does not counsel people on how to file lawsuits.

Disciplinary Counsel submitted only one example of a specific response by Palmer to an e-mail inquiry.[2] A writer from Massachusetts complained about the nonresponsiveness of her attorney. It is apparent from the two e-mails provided to the board that there were other communications between Palmer and his correspondent, but we do not have those. What we do have is the following response from Palmer:

"Obviously, this lawyer is not only incompetent but also dishonest and a liar, which unfortunately isn't unusual. I would contact the judge on your case and send him or her a letter and explain what has been going on and especially his demand for $15,000. I assume this was a contingent fee contract where he would receive a percentage of whatever was won. By signing such a contract and then turn around [sic] and demand $15,000 is unethical and basically nothing more than extortion.

---

and wills. It customized the forms based upon the user's state of residence and responses given to questions, and gave advice about the legal ramifications of certain options. The Texas authorities successfully challenged the customized, interactive, elements of the software, but did not challenge the more generic advice. The decision was vacated after the Texas legislature amended the unauthorized practice statute to permit the sale of software such as QFL if accompanied by disclaimers. This board expressed no view on the outcome of *Parsons*.

**2.** In response to interrogatories requesting specific information about his communications with persons who contacted him for free legal advice, Palmer invoked his rights under the Fifth Amendment to the United States Constitution. Palmer had earlier refused to produce documents in response to a subpoena *duces tecum* requesting that same information. Palmer wrote, "I will not engage in any discovery that could or would tend to incriminate me regarding your complaint that I am engaged in the unauthorized practice of law. In plain language, you have the burden of proving the truth of your frivolous claim, not me!" This could explain why Disciplinary Counsel was unable to present specific instances of conduct.

"Also, contact the local Bar Association and file a complaint about his conduct, for neglecting a legal matter, failure to communicate with the client, and refusal to return a client's file.

"If you need help filing the complaint, let me know. Also, let me know where this happened, what state?"

■ It is true that Palmer's suggestion to contact the judge and bar association is "advice," but it does not rise to the level of legal advice. The writer's concern is that she has already hired an attorney but believes that she is not being treated properly. Palmer's advice has more to do with how to handle the lawyers' alleged nonfeasance than with how to address an underlying legal problem. Although the relationship with the lawyer could become a matter requiring legal advice, Palmer's remarks at this stage are less legal than practical.

■ Disciplinary Counsel also points to several admissions by Palmer that he has rendered legal advice and engaged in the unauthorized practice of law. Under the section of his web-site titled "Frequently Asked Questions (FAQ) Regarding Legal Advice," Palmer offers for sale a publication containing "a collection of requests along with the Chairman's responses to questions from individuals seeking legal advice. It allows the reader a unique opportunity to listen to and actually feel the pain, anguish and/or frustration visited upon those individuals seeking advice." Palmer testified that he was working on the publication but that it was not yet available. The board cannot assume that the "Chairman's responses" consisted of legal advice. The focus of the sales pitch is more upon the "pain, anguish and/or frustration" of those seeking advice than upon the responses. This would be consistent with the tenor of the web-site as a forum for criticizing lawyers and judges.

Disciplinary Counsel also refers to remarks attributed to Palmer in a *Wall Street Journal* article:

"Mr. Palmer says he is indeed fulfilling needs 'that according to the rules on [the unlicensed practice of law] * * * would require one to go to a lawyer. I will readily admit that I am doing that. On the other hand, my argument is, I think their rules and laws are unconstitutional,' a restraint of trade and of free speech, he says."

Palmer testified that he cannot recall making the comments. One could take the words attributed to him as a flat admission that he engaged in the unauthorized practice of law, but once again the evidence of actual conduct is lacking. A finding of unauthorized practice in a contested proceeding must rest upon some evidence of specific conduct, not comments attributed to the respondent in a newspaper.

Notations on Palmer's Letterhead

Disciplinary Counsel submitted two examples of letterhead for the Committee to Expose Dishonest and Incompetent Attorneys and Judges. Each example prominently displays the notation, "Now Offering Fee Legal Advice." On the letter to Disciplinary Counsel, Palmer lists himself as "David Palmer, J.D.\*/Executive Director." The asterisk by the J.D. directs the reader to a note: "also not licensed to practice in Colorado and other states."

■■ As with the web-site, the letter's offer of free legal advice does not, without more, constitute the unauthorized practice of law. Disciplinary Counsel also argues that the use of the letters "J.D." amounts to Palmer's holding himself out as a licensed attorney. "No person who is not regularly licensed to practice law in this state shall hold himself out in any manner as an attorney at law, or shall represent himself either orally or in writing, directly or indirectly, as authorized to practice law." R.C. 4705.07. Thus, for example, an attorney admitted to practice only in Illinois may not use designations such as "General Counsel" on correspondence so as to mislead others into thinking he is authorized to practice in Ohio. *Cleveland Bar. Assn. v. Misch* (1998), 82 Ohio St.3d 256, 695 N.E.2d 244.

■ Although the initials "J.D." normally indicate possession of a Juris Doctor Degree—which Palmer does not have—its use in this context is insufficient to amount to a representation that Palmer is an attorney licensed in the state of Ohio. It is unclear how often Palmer used the designation in correspondence with the public. His letterhead is not preprinted but is customized to fit the whim of the moment. Not all versions contained the "J.D." designation, and most contain some combination of graphics (such as snarling dogs) and satirical references. On a version introduced into evidence by Palmer, the asterisk next to the "J.D." refers the reader to a note: "Also not licensed in Iowa, Texas, Michigan, and the Land of Oz."

As for instances in which the "J.D." designation was used, there is no evidence that anyone was misled into believing that Palmer is admitted to practice law in Ohio. It is unlikely that Disciplinary Counsel was misled by the letter introduced into evidence. There is no evidence that anyone else was fooled into thinking that Palmer was an attorney. Palmer called two lay witnesses who testified that they did not assume from his web-site or his letterhead that he was licensed to practice law.

None of this is to say that the use of "J.D." in combination with other factors could not amount to a holding out that one is an attorney, nor does the inclusion of satire guarantee immunity. The relator has simply failed to prove that

Palmer's use of the "J.D." designation under the unique facts of this case warrants a finding of unauthorized practice.

### The 1988 Appellate Brief

Disciplinary Counsel's final ground for its complaint is Palmer's submission of a brief on behalf of Deanbern Investment Corporation in *Palmer v. Westmeyer* (1988), 48 Ohio App.3d 296, 549 N.E.2d 1202 (Lucas Cty.). Palmer attempted to file the brief *pro se* in his capacity as owner and president of the company. The court struck the brief on the basis that Palmer was engaging in the unauthorized practice of law under R.C. 4705.01. The misconduct was accordingly addressed and a sanction levied by the court in which the offense occurred.

There is little doubt that Palmer improperly filed the brief, but his misconduct occurred thirteen years ago and was the subject of a reported opinion. There is no evidence that he persisted in this course of conduct beyond the one instance cited. Disciplinary Counsel provides no other examples of Palmer's submitting pleadings or briefs.

Although there is no statute of limitations for violations upon which the board may issue a finding, a lapse of thirteen years between the violation and the complaint is excessive.[3] The board is not engaged in the academic exercise of determining whether conduct of the distant past amounted to the unauthorized practice of law. The board makes its findings and recommendations so that the Supreme Court may issue a show cause order to "prohibit Respondent from engaging in any such conduct in the future." Supreme Court Rules for the Government in the Bar VII, Section 19(D). Misconduct occurring thirteen years ago, which does not appear in imminent danger of repetition and was appropriately addressed by the court involved, does not warrant the issuance of findings or an order.

### Conclusion

The evidence is insufficient to demonstrate any specific instance in which Palmer has engaged in the unauthorized practice of law by giving legal advice. The content of his web-site must be judged no differently than written publications containing discussions of legal issues. The difference is that the Internet also provides a ready means of interaction with readers, through which an electronic publisher such as Palmer could stray from the generic to the specific. Palmer's remarks on his web-site and to the press indicate that he might have

---

3. By comparison, a criminal charge for the unauthorized practice of law under the statute cited by the judge in *Palmer v. Westmeyer* is governed by a two-year statute of limitations. R.C. 4705.01; R.C. 2901.13(A)(2). Even most felony prosecutions must be brought within six years. R.C. 2901.13(A)(1).

crossed the line in some instances, but the proof was simply insufficient to establish that he in fact gave legal advice and counsel to specific individuals.

If the contents of amoralethics.com, and other web-sites like it, stray into the delivery of legal advice so specific and individualized that readers could be misled to their detriment into substituting that advice for sound counseling by a qualified attorney, this state and others may have no choice but to intervene. That has not been proven in this case, and accordingly the complaint is DISMISSED.

*Complaint dismissed.*

/s/ J. Jeffrey McNealey, Chair,
Board of Commissioners on the
Unauthorized Practice of Law